[Cite as *In re L.M.*, 2013-Ohio-2669.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE:  L.M.

C.A. No.      26772


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.      DN 11-08-566

DECISION AND JOURNAL ENTRY

Dated: June 26, 2013

---

BELFANCE, Judge.

**{¶1}** Appellant, Latasha M. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor child, L.M., and placed her in the permanent custody of Summit County Children Services ("CSB").  This Court affirms.

I.

**{¶2}** L.M., born April 19, 2008, had been living with Mother before this case began. Paternity was never established, and no one claiming to be the father of L.M. ever appeared.

**{¶3}** The case began with a complaint filed on August 22, 2011, alleging neglect and dependency of L.M.  The filing was spurred by events occurring shortly before that date.  Mother later testified that she was in the process of moving from Cleveland to the Akron area and left L.M. with a friend for "three or four days" so that she could set up a new apartment.  When the

friend later refused to give the child back to her, Mother called the police for assistance in retrieving her daughter.

{¶4} When the police arrived, they had concerns that Mother was under the influence of an intoxicant and also recognized the home address Mother provided as a drug house. Mother apparently could not provide the names of any relatives that could care for the child. Consequently, the police assumed custody of L.M. and contacted CSB.

{¶5} At the adjudicatory hearing, the magistrate heard testimony that Mother may have left L.M. with the friend for more than a few days and, perhaps, as long as six weeks. The magistrate determined that the friend was an inappropriate care provider as she had previously lost custody of her own children. The trial court found L.M. to be neglected and dependent, and placed the child in the temporary custody of the agency. The trial court also adopted the case plan put forward by the agency. That case plan addressed concerns regarding housing, substance abuse, and mental health.

{¶6} On November 22, 2011, CSB moved, pursuant to R.C. 2151.419(A)(2)(e), to bypass the statutory requirement that CSB make reasonable efforts to return the child to Mother's home on the basis that Mother's parental rights had been involuntarily terminated in 2003 with respect to another child. The motion was granted and, therefore, the agency was not required to make reasonable efforts to prevent the removal of the child from her home, eliminate the continued removal of the child from her home, or return the child to her home. *See* R.C. 2151.419(A)(2).

{¶7} On June 18, 2012, the agency moved for permanent custody. Following a hearing on the motion, the trial court granted permanent custody of L.M. to CSB. Mother appeals and assigns two errors for review.

II.

ASSIGNMENT OF ERROR I

THE COURT ERRED AND ABUSED ITS DISCRETION IN PLACING THE CHILD IN THE PERMANENT CUSTODY OF SUMMIT COUNTY CHILDREN SERVICES AS THE MANIFEST WEIGHT OF THE EVIDENCE PROVIDED FOR THE GRANTING OF A SIX MONTH EXTENSION OF TIME FOR MOTHER TO COMPLETE HER CASEPLAN OBJECTIVES.

{¶8} Mother contends that the trial court erred in determining that L.M. could not or should not be placed with a parent within a reasonable time. *See* R.C. 2151.414(B)(1)(a). In particular, she contends that the evidence fails to support any of the R.C. 2151.414(E) factors that would sustain this finding on the first prong of the permanent custody test. *See* R.C. 2151.414(B)(1)(a).

{¶9} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶10} The trial court found that the first prong of the permanent custody test was satisfied because L.M. could not be placed with a parent within a reasonable time or should not be placed with a parent. In reaching that conclusion, the court relied upon subsections R.C. 2151.414(E)(1) [failure to remedy conditions despite reasonable case planning]; R.C.

2151.414(E)(4) [lack of commitment]; and R.C. 2151.414(E)(11) [prior involuntary termination of parental rights] in regard to Mother, and R.C. 2151.414(E)(10) [abandonment] in regard to the unknown father. Mother challenges the findings regarding herself as not being supported by the weight of the evidence.

{¶11} The first-prong of the statutory test may be satisfied by clear and convincing evidence of any one of the R.C. 2151.414(E) factors. *See* R.C. 2151.414(E). We find it unnecessary to consider Mother's arguments concerning the other factors because we conclude that the test is satisfied by reliance on R.C. 2151.414(E)(11). That factor is applicable where the parent has had parental rights terminated with respect to a sibling of the child and the parent has failed to provide clear and convincing evidence to demonstrate that the parent can provide a legally secure permanent placement and adequate care for the health, welfare and safety of the child. *Id.*

{¶12} Mother disputes the trial court's reliance on R.C. 2151.414(E)(11) by claiming that her loss of custody of her other child was the result of a voluntary surrender rather than an involuntary termination. In sole support of this claim, Mother relies on the rather fragmented testimony of the CSB social worker in the present case. In pertinent part, the caseworker testified that "Mother lost parental rights in 2002 and, voluntarily, the child was placed into permanent custody due to lack of case plan compliance on mother's part." Thereupon, the prosecutor indicated: "I do have a certified copy of the record." The trial judge acknowledged: "That will speak for itself."

{¶13} A certified copy of the trial court's April 29, 2003 judgment entry along with the magistrate's decision of the same date in Case No. DN 02-1-5 of the Summit County Court of Common Pleas, Juvenile Division, regarding Mother's older child were introduced into evidence.

Together, these documents demonstrate that Mother's parental rights to L.M.'s sibling were involuntarily terminated pursuant to R.C. 2151.414. They reveal that the matter came on for a contested hearing on CSB's motion for permanent custody, that the court determined that the child could not be placed with either parent within a reasonable time, and that the termination of Mother's parental rights was in the best interest of the child.

{¶14} The incongruous use of the word "voluntarily" by the caseworker in the present case is insufficient to establish that Mother voluntarily surrendered her parental rights to this sibling of L.M. There is no evidence that Mother voluntarily consented to the termination of her parental rights to that child, nor is there evidence that a juvenile court accepted such a surrender. *See* R.C. 5103.15(B)(1) and Juv.R. 38(B)(1) (providing that a parent may agree to surrender permanent custody of a child with the approval of a juvenile court, where the court determines it is in the child's best interest). *See also In re A.P.*, 9th Dist. No. 23698, 2007-Ohio-5413, ¶ 13 (noting that the parents voluntarily, knowingly, and intelligently surrendered parental rights and that the trial judge accepted their voluntary surrender). To the contrary, Mother, in fact, testified that her other child was "taken away" by Children Services because "I was never there with my child, and I left my baby with my foster sisters." Mother's testimony is consistent with the involuntary termination reflected by the certified copies of court documents placed in evidence before the trial court.

{¶15} The conclusion that Mother's parental rights had been involuntarily terminated as to a prior child is further supported by procedural facts in the present case. The magistrate granted a reasonable efforts bypass to CSB on the grounds that Mother's parental rights had been involuntarily terminated as to a sibling of L.M. *See* R.C. 2151.419(A)(2)(e). In the absence of any objection by Mother, the trial judge adopted the decision of the magistrate. The statutory

provision for reasonable efforts bypass is explicitly applicable to involuntary terminations of parental rights, and it does not apply to voluntary terminations. *See id.* Mother's failure to object to the magistrate's decision is additional evidence that Mother's parental rights were involuntarily terminated as to a sibling of L.M. Moreover, absent objection, Mother may not challenge that finding on appeal. *See* Juv.R. 40(D)(3)(b)(iv).

{¶16} Accordingly, the weight of the evidence supports the trial court's finding that Mother's parental rights were involuntarily terminated as to a sibling of L.M. *See* R.C. 2151.414(E)(11). That finding, in turn, supports the trial court's determination that L.M. cannot or should not be placed with a parent within a reasonable time. *See* R.C. 2151.414(B)(1)(a). The first prong of the permanent custody test is thereby satisfied.

{¶17} Mother also argues that the trial court erred in failing to grant her motion for a six-month extension of temporary custody. In her appellate brief, Mother explains that an extension of temporary custody requires consideration of the best interest of the child. Since we conclude, in the second assignment of error below, that the trial court did not err in finding that an award of permanent custody was in the best interest of the child, we also conclude the trial court did not err in finding that an extension of temporary custody was not in the child's best interest.

{¶18} Mother's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION BY FINDING PERMANENT CUSTODY TO BE IN THE CHILD'S BEST INTEREST, ESPECIALLY IN LIGHT OF THE FACT THAT THE COURT FAILED TO APPOINT COUNSEL FOR THE MINOR CHILD AND AS SUCH COULD NOT PROPERLY DETERMINE THE CHILD'S BEST INTEREST.

{¶19} Mother contends that the trial court erred in finding that it was in the best interest of the child to be placed in the permanent custody of CSB. *See* R.C. 2151.414(D)(1). Specifically, she argues that the guardian ad litem could not effectively represent L.M.'s wishes to the court because the guardian ad litem did not ask the child what her wishes were. R.C. 2151.414(D)(1)(b). In addition, Mother argues that the child should have been given her own attorney because L.M told Mother she wanted to live with her and this expression was contrary to the guardian ad litem's recommendation.

{¶20} When determining whether a grant of permanent custody is in a child's best interest, the juvenile court must consider all the relevant factors, including those enumerated in R.C. 2151.414(D): the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence in his life, and any of the factors in R.C. 2151.414(E)(7) to (11) if relevant. *See In re R.G.*, 9th Dist. Nos. 24834 & 24850, 2009-Ohio-6284, ¶ 11. "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." *In re Smith*, 9th Dist. No. 20711, 2002 WL 5178, *3, (Jan. 2, 2002); *see also In re Palladino*, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, ¶ 24. Furthermore, in evaluating the evidence regarding the best interest of the child, no single factor is to be "given greater weight or heightened significance." *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 57, citing *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56. All factors relevant to the best interest of the child are to be weighed together. *In re Schaefer* at ¶ 64.

{¶21} The first best interest factor requires consideration of the child's interactions and interrelationships with those involved in her life. *See* R.C. 2151.414(D)(1)(a). Mother's relationship with her child was evidenced, in part, by the caseworker's testimony regarding the

weekly visits she supervised. The caseworker testified that Mother attended the visits fairly regularly and that Mother and child were happy to see each other. Mother generally interacted well with L.M. and was appropriate in her interactions with her. She typically brought age appropriate activities and either snacks or dinner to the visits. The caseworker indicated that Mother and child cried at separation, but that once the child was back to the foster home, she was all right. The caseworker would occasionally need to redirect Mother during visits, however, such as when Mother became frustrated with L.M. for refusing to listen to her and when she promised L.M. that she would be coming back home. The caseworker also testified that Mother inappropriately blamed L.M. for putting them in this situation with Children Services.

{¶22} Additionally, the caseworker addressed Mother's limited progress on her case plan and the issues that stood between her and reunification with her daughter. As to housing, the caseworker explained that Mother had a history of unstable housing arrangements. Mother eventually obtained her own housing, a two-bedroom apartment, in August 2012. The caseworker had seen the lease and believes Mother can financially maintain that housing.

{¶23} Next, the caseworker explained that Mother had failed to substantially address either the mental health or the substance abuse objectives of her case plan. Regarding the mental health objective, Mother completed an assessment at Catholic Social Services, but only saw her counselor twice before being discharged for lack of benefits and lack of attendance. She had had no counseling since January 2012. The caseworker sought to assist Mother in getting her funding reinstated and also issued referrals to other agencies, but Mother never followed through with those. Mother did an assessment at Portage Path and obtained a diagnosis, but never returned for treatment and that case was closed. At Mother's request, recent efforts to process a second referral for counseling at Portage Path were completed shortly before the permanent

custody hearing. That agency then determined that they were unable to provide Mother with mental health treatment until her substance abuse treatment was addressed.

{¶24} In her testimony, Mother admitted that she was slow to comply with the mental health objective because she was too depressed to do anything and also felt she should not have to obtain treatment. She reasoned that she had friends to talk to and did not need a counselor. At the same time, Mother admitted to suffering from depression and receiving social security disability payments for that diagnosis. We also note that Mother's mental health issues, including severe depression, suicidal and homicidal feelings, and feelings of being overwhelmed were cited in the juvenile court's 2003 opinion that resulted in the termination of Mother's parental rights to her older child. *See In re L.M.* (DOB 6/6/01), Summit J.C. No. DN 02-1-5, Magistrate's Decision, page 2 (Apr. 29, 2003). Mother did not follow through with counseling sessions at that time either, and the counseling agency closed her case for lack of attendance.

{¶25} Finally, the caseworker testified about Mother's efforts to address substance abuse. Even though the caseworker made several referrals for a substance abuse assessment and arranged to personally drive Mother to one of those appointments, Mother never completed an assessment. Mother submitted only seven drug screens over the course of 14 months, although weekly testing was requested. Two of those screens were positive for marijuana and one was positive for alcohol. Mother said she did not do more screens because she was "overwhelmed with a lot of stuff." In 2003, Mother similarly failed to obtain the recommended assessment for substance abuse and did not submit regular drug tests as requested. Significantly, Mother was arrested in September 2012 and convicted for possession of cocaine more than a year into the case. She was placed on probation for two years. At the time of the hearing, Mother testified that she had another substance abuse assessment scheduled for one week after the permanent

custody hearing. Based on this evidence, Mother has had a long history of difficulty with both mental health problems and substance abuse.

{¶26} L.M. had no relationship with her father as he was undetermined. She also had no relationship with Mother's older child since that child was placed in permanent custody before L.M. was born. There is no evidence that L.M. had any relationships with other relatives.

{¶27} L.M.'s custodial history reveals that she resided with Mother for three and one-half years until her removal at the start of this case. Since that time, the child has been in foster care with the same family for 16 months. *See* R.C. 2151.414(D)(1)(c).

{¶28} As found by the trial judge, Mother cannot provide for herself, let alone care for her child. No relatives are available to provide care for the child. CSB inquired of known relatives, but obtained no positive responses. *See* R.C. 2151.414(D)(1)(d). In evaluating the factors relevant to the child's best interest, the trial court was also entitled to consider the fact that Mother had her parental rights involuntarily terminated with respect to a sibling of the child. *See* R.C. 2151.414(D)(1)(e) and R.C. 2151.414(E)(11).

{¶29} Mother's argument on appeal focuses on the best interest factor concerning the wishes of the child regarding her future custody. *See* R.C. 2151.414(D)(1)(b). Mother seems to argue that the guardian ad litem could not indicate the wishes of L.M. because there was no evidence that the guardian ad litem "ever asked the child what her wishes were." R.C. 2151.414(D)(1)(b) specifically provides that the wishes of the child may be "expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child[.]" *Id. See also In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 55. Further, the Ohio Supreme Court has specifically indicated that the trial court is imbued with the "discretion to accept the testimony of the guardian ad litem on the child's wishes rather than hearing a direct

expression of those wishes made by the child." *In re C.F.* at ¶ 56. As recognized by the statute, a very young child will not be able to address this question directly and with the mature consideration it deserves. Thus, in the case of a very young child, the Ohio Supreme Court has accepted the testimony of a guardian ad litem indicating his or her belief regarding the custody alternative that would be in the best interest of the child. *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 60. The decision of whether to accept testimony of the guardian ad litem or hear a direct expression of those wishes made by the child rests in the sound discretion of the trial court. *In re C.F.* at ¶ 56.

{¶30} In this case, the guardian ad litem testified that, at four years of age, L.M. was too young to express her own wishes regarding custody, and she believed that an award of permanent custody was in the child's best interest. The guardian ad litem explained that Mother had made so little progress on her mental health and chemical dependency objectives that she would be concerned if L.M. were returned to her care. She also stated that L.M. is doing well in her foster home and that she is very comfortable with the foster family. She interacts well with the other two children in the foster home and loves the pet cat. While living with her foster family, L.M. has participated in community and church activities, including choir. She attends Head Start and is said to be well adjusted in the classroom. The trial court was entitled to find that the guardian ad litem's testimony satisfies this portion of the best interest test.

{¶31} Finally, Mother asserts that L.M. should have had separate counsel appointed to represent her wishes. In making this claim on appeal, she cites her own testimony indicating that the child told her she wanted to live with her. She claims that the trial court erred in failing to conduct an in camera interview of the child and cites *In re Ridenour*, 11th Dist. Nos. 2003-L-146, 2003-L-147, 2003-L-148, 2004-Ohio-1958, in support of her position. *Ridenour* fails to

require an investigation by the trial court in every such case, but rather only when the child "consistently" expresses a desire to be with a parent. *Id.* at ¶ 51, quoting *In re Williams*, 11th Dist. Nos. 2002-G-2454 and 2002-G-2459, 2002-Ohio-6588, at ¶ 26. The subsequent decision of the Ohio Supreme Court, in *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, emphasizes that the child in that case had repeatedly and consistently expressed a desire to remain with his mother. *Id.* at ¶ 5 - 6. Since that decision was issued, this Court has "repeatedly emphasized, [that] to demonstrate a 'conflict' between the child's wishes and the guardian's recommendation that permanent custody is in the child's best interest, the record must demonstrate that the child has repeatedly and consistently expressed the affirmative desire to return to the parent's home." *In re B.W.*, 9th Dist. No. 12CA0016-M, 2012-Ohio-3416, ¶ 42, citing *In re J.P.-M.*, 9th Dist. Nos. 23694 & 23714, 2007-Ohio-5412, ¶ 56; and *In re J.B.*, 9th Dist. No. 23436, 2007-Ohio-620, ¶ 22-23.

**{¶32}** In the present case, there is no evidence that child repeatedly and consistently expressed a desire to live with Mother. Rather, the only indication that L.M. wished to live with Mother came during Mother's testimony as the final witness in the permanent custody hearing. At that time, Mother was asked how her visits with L.M. had been going and Mother responded that they are good and that her daughter says she wants to come home. Mother does not cite any other evidence indicating that the child had expressed a desire to return to live with Mother. Mother's single statement at the very close of the permanent custody hearing does not establish a conflict with the guardian ad litem's recommendation such as to warrant investigation of the need to appoint separate legal counsel for this four-year-old child.

**{¶33}** Based upon the lack of a consistent expression of a desire for reunification by the child and the overwhelming evidence supporting the trial court's finding that the child's best

interest would be served by awarding custody to CSB, we conclude that the trial court did not err in failing to appoint independent counsel for L.M. Mother's second assignment of error is overruled.

## III.

**{¶34}** Mother's two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
HENSAL, J.
CONCUR.

APPEARANCES:

RONALD T. GATTS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.