[Cite as *In re S.R.T.*, 2016-Ohio-788.]

STATE OF OHIO         )                 IN THE COURT OF APPEALS

                          )ss:            NINTH JUDICIAL DISTRICT

COUNTY OF SUMMIT    )

IN RE: S.R.T.                           C.A. No.      27978

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 14-10-648

DECISION AND JOURNAL ENTRY

Dated: March 2, 2016

CARR, Judge.

**{¶1}** Appellant, Kennisha T., ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor child, S.R.T., and placed her in the permanent custody of Summit County Children Services ("CSB"). This Court affirms.

I.

**{¶2}** Kennisha T. ("Mother") and Tommy R. ("Father") are the parents of S.R.T, born September 16, 2014. Father did not participate in the permanent custody hearing below and is not a party to the present appeal.

**{¶3}** S.R.T. was born approximately seven weeks prematurely. The child remained in the hospital for two weeks after her birth with breathing problems and drug withdrawal symptoms. On October 3, 2014, CSB filed a complaint in juvenile court, alleging that the child was abused, neglected, and dependent based upon Mother's drug use during the pregnancy, her

mental health status, and her inability to provide appropriate care for S.R.T. The complaint noted that Mother has an extensive history with children services, including the termination of her parental rights to six children in Ohio and one in West Virginia. *See In re P.T.,* 9th Dist. Summit No. 24207, 2008-Ohio-4690; *In re A.T.*, 9th Dist. Summit No. 23065, 2006-Ohio-3919; and *In re T.L.R., Jr.,* Raleigh County, W.Va., Circuit Court No. 09-JA-03-B (June 9, 2010). The trial court granted emergency temporary custody of S.R.T. to CSB and, upon discharge from the hospital, the child was placed in foster care.

{¶4} Subsequently, the trial court adjudicated S.R.T. to be dependent and placed her in the temporary custody of CSB. Based upon testimony, the trial court noted that Mother had a lengthy history with children services. The court specifically found that Mother had struggled with mental illness and chemical dependency in the past and had failed to complete treatment to address these issues.

{¶5} At disposition, the trial court adopted a case plan that required Mother to: (1) complete psychological and psychiatric evaluations and comply with recommendations; (2) complete a chemical dependency evaluation and comply with recommendations, including drug screens as requested by treatment providers and/or CSB; (3) maintain housing and income sufficient to meet the child's basic, medical, and special needs; (4) discuss past issues of domestic violence with her counselor; and (5) complete a parenting class. Father was ordered to: (1) establish paternity; (2) attend visitations; (3) complete mental health and chemical dependency evaluations and comply with recommendations, including drug screens; and (4) refrain from criminal activity.

{¶6} Also at disposition, the trial court granted CSB's motion for a reasonable efforts bypass pursuant to R.C. 2151.419(A)(2) based on the involuntary termination of the parents'

parental rights to the siblings of this child. *See* R.C. 2151.419(A)(2)(e). Accordingly, the agency was no longer required to make reasonable efforts to reunify the child with her parents. *See* R.C. 2151.419(A)(2). *See also In re L.M.*, 9th Dist. Summit No. 25772, 2013-Ohio-2669, ¶ 6. Thereafter, the agency moved for permanent custody of S.R.T. Following a hearing, the trial court terminated the parents' parental rights to S.R.T. and granted permanent custody of the child to CSB. Mother has appealed and has assigned one error for review.

II.

## Assignment of Error

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT TERMINATED MOTHER'S PARENTAL RIGHTS AS THE DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶7} Mother contends the trial court judgment granting permanent custody of S.R.T. to CSB is against the weight of the evidence. In general, before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶8} When the trial court grants a motion for a reasonable efforts bypass pursuant to R.C. 2151.419(A)(2), as it did here, R.C. 2151.413(D)(2) and R.C. 2151.414(B)(2) apply. *See In*

*re A.U.,* 2d Dist. Montgomery No. 22264, 2008-Ohio-186, ¶ 17.  Under R.C. 2151.413(D)(2), except for situations inapplicable to this case,[1] when a motion for reasonable efforts bypass is granted, the agency is required to file a motion for permanent custody.  *See In re W.W.*, 1st Dist. Hamilton No. C-110363, 2011-Ohio-4912, ¶ 49.  Further, under R.C. 2151.414(B)(2), the trial court "shall grant permanent custody of the child to the [agency]" if the court determines that: (1) the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent, in accordance with R.C. 2151.414(E) and (2) permanent custody is in the child's best interest, in accordance with R.C. 2151.414(D).  *See In re J.D.*, 2d Dist. Montgomery No. 26588, 2015-Ohio-4114, ¶ 48-49.

{¶9}    In the present case, CSB moved for permanent custody of the child pursuant to R.C. 2151.413(D)(2).  The trial court granted the motion and entered findings in keeping with R.C. 2151.414(B)(2).  In so doing, the trial court found that S.R.T. could not be returned to either parent within a reasonable time or should not be placed with either of them.  *See* R.C. 2151.414(B)(2).  In support of that finding, the trial court determined that both parents (1) involuntarily lost their parental rights to other children and (2) failed to remedy the conditions that brought S.R.T. into care.  *See* R.C. 2151.414(E)(11) and (1).  The trial court additionally found that Father abandoned S.R.T., having only seen her on October 3, 2014 and July 31, 2015. *See* R.C. 2151.414(E)(10).  Lastly, the trial court found that permanent custody was in the best interest of the child.  *See* R.C. 2151.414(B)(2) and R.C. 2151.414(D).

{¶10}  On appeal, Mother very summarily disputes the finding that the child could not or should not be placed in her custody within a reasonable time.  While Mother does not dispute the supportive finding that her parental rights were involuntarily terminated as to other children,

---

[1] *See* R.C. 2151.413(D)(3)(a)-(d).

Mother is nevertheless statutorily entitled to counter the impact of this finding by providing "clear and convincing evidence [that she] can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child[.]" R.C. 2151.414(E)(11). In other words, Mother may challenge the determination that the child cannot or should not be placed in her custody within a reasonable time, by clearly and convincingly establishing that, notwithstanding the several prior terminations of her parental rights, she can now provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child. *See id.* Upon careful review of the record, however, we cannot conclude that Mother has met her burden.

{¶11} The concerns regarding Mother's ability to provide proper care for S.R.T., as identified in her case plan, include mental health, chemical dependency, domestic violence, and parenting issues. The record demonstrates that those concerns were not alleviated.

{¶12} First, Mother did not complete a psychological evaluation and follow its recommendations. Caseworker Korane obtained approval for Mother to obtain a psychological and parenting evaluation at Summit Psychological Associates. Mother refused to sign a release there and went to Catholic Charities on her own accord instead. Mother maintains that she completed a conforming evaluation there, but it was not a psychological or psychiatric evaluation as required by her case plan, but rather a mental health evaluation conducted by a counselor. As explained by Catherine Adamek, director of services at Catholic Charities in Summit County, a mental health evaluation can be conducted by a social worker, psychologist, or counselor, whereas a psychological evaluation must be conducted by a psychologist and involves more testing. Her agency, she stated, does not conduct psychological evaluations, but rather only mental health evaluations. It also offers counseling.

{¶13} Although Mother was mistaken in her belief that she obtained a psychological evaluation at Catholic Charities, even so, she failed to complete the counseling that was recommended for her admitted diagnosis of anxiety. Mother attended only seven counseling sessions at Coleman Professional Services from December 2014 to April 2015, before she stopped attending. She just recently reengaged on a walk-in basis. Mother's counselor testified that they were only at the beginning stages of Mother's counseling. The counselor also testified that she did not address domestic violence with Mother. The written evaluation of Mother's services at Coleman Services indicated that Mother was resistant to the treatment options offered and refused medication management. Caseworker Korane testified that she had hoped Mother would have gained emotional stability and insight into her anxiety, depression, and history of domestic violence through counseling. Unfortunately, Mother was not consistent in attending counseling, and the caseworker did not observe such insight or stability in Mother. Further, Ms. Korane said that it was difficult to communicate with Mother because she often appeared to be distracted and was not able to answer questions directly.

{¶14} Second, there is no evidence that Mother completed a chemical dependency evaluation. Caseworker Korane referred Mother to the Community Health Center for such an evaluation, but Mother never completed one.

{¶15} Third, there is no evidence that Mother addressed her history of domestic violence with a counselor as required by the trial court. To this point, while Mother denies any current romantic relationship with Father, she testified that he continues to help her when needed. According to Mother's prior case worker, Mother reported past violence in her relationship with him (pistol whipping and rape) and wrote a letter to the caseworker, saying that Father was a very violent person and if she would turn up dead, that he is the one who did it. Failure to

address this issue through counseling is a significant omission in Mother's efforts to demonstrate that she can provide for the safety of her child.

{¶16} Finally, there is no evidence that Mother completed a parenting class. She attended only three out of a series of ten sessions at Akron Pregnancy Services. The significance of this failure is emphasized by the caseworker's testimony regarding Mother's parenting. Ms. Korane said that Mother seemed confused and lacked understanding of certain directions regarding child care, such as the amount of formula and thickening to give to S.R.T. Later, at nine months, Mother fed Vienna sausage out of a can and a lollipop to the infant. When the caseworker and a doctor both told Mother that this was unsafe, Mother took great offense and did not want to listen to what they had to say. The caseworker said that Mother was appropriate in holding the child, talking to her and following her when she started to move around, but also said that she was not nurturing toward her. Mother would not always focus on the child, but would turn to rehashing past events regarding her other children with adults that were present.

{¶17} Mother's failure to consistently and fully address her mental health issues, her failure to complete a chemical dependency evaluation, her failure to address the history of domestic violence with a man with whom she has a continuing relationship, and her failure to complete a parenting course all have a negative bearing on the question of whether she can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of her child. The record demonstrates that Mother has continuing issues with emotional stability, judgment, and parenting ability.

{¶18} Consequently, Mother has not clearly and convincingly demonstrated that, notwithstanding the prior terminations, she can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child. *See* R.C. 2151.414(E)(11).

Because we conclude that the record clearly and convincingly supports the trial court finding under R.C. 21515.414(E)(11), it is not necessary for us to address the alternative finding under R.C. 2151.414(E)(1). Accordingly, the record also supports the trial court determination that the child cannot be placed with either parent within a reasonable time or should not be placed with a parent. *See* R.C. 2151.414(B)(2).

{¶19} Next, we consider Mother's argument that permanent custody is not in the best interest of the child and that the trial court should have granted legal custody of S.R.T. to Mother or to the child's aunt instead. Upon review, we conclude that the weight of the evidence supports the trial court's decision that permanent custody is in the best interest of the child.

{¶20} In determining the best interest of the child, R.C. 2151.414(D) directs the court to consider all relevant factors, including those enumerated in R.C. 2151.414(D): the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence, and whether any of the factors in R.C. 2151.414(E)(7) to (11) apply. *See In re R.G.*, 9th Dist. Summit Nos. 24834 & 24850, 2009-Ohio-6284, ¶ 11. "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." *In re Smith*, 9th Dist. Summit No. 20711, 2002 WL 5178, *3 (Jan. 2, 2002); *see also In re Palladino*, 11th Dist. Geauga No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.

{¶21} The first best interest factor requires consideration of the relevant personal interactions and interrelationships of the child. S.R.T. has some special health needs, including acid reflux, a dietary requirement of thickener for liquids, and an issue involving large motor skills and balance. In addition, there was a slight delay in the growth of her head circumference, a possible indication of future developmental disabilities. The caseworker testified to her

concern that Mother would not be consistent in following up with the medical care that S.R.T. requires. As noted above, Mother had difficulty understanding some of the special feeding issues related to S.R.T.'s condition as well as normal feeding guidelines for an infant. In addition, she did not accept suggestions well. Mother regularly visited with S.R.T. at the visitor's center under monitored conditions. The agency was not comfortable in lessening the oversight of Mother's time with her child due to the continuing concern with Mother's mental health. Although Mother clearly loved her child, she did not always focus on her during visits. Her attention was said to often be elsewhere.

{¶22} Father did not comply with any part of his reunification case plan beyond establishing paternity. He did not respond to multiple telephone calls and letters from the caseworker and guardian ad litem.

{¶23} S.R.T. occasionally visited with some of her siblings in the Akron area, but it does not appear that such visits occurred frequently. There was little evidence of a continuing positive relationship between the child and any other relatives.

{¶24} In her written report, the guardian ad litem recommended that the trial court grant permanent custody to CSB. She further recommended that S.R.T. should be placed with the maternal aunt and her husband for six months until they became eligible to adopt her. In court, the guardian testified to her belief that Mother did not do enough to address her mental health issues to warrant returning custody to her. She explained that Mother was generally uncooperative, both with herself, as guardian ad litem, and with CSB. Mother could be difficult, argumentative, and would get upset easily. Mother did not even speak to the guardian ad litem for a long time and would not agree to meet with her or the caseworker without her attorney present.

**{¶25}** During her testimony, the guardian posited that it might not be necessary to sever parental ties because the maternal aunt was willing to allow visits by Mother regardless of whether she had legal custody or adopted S.R.T. The option of legal custody no longer existed, however, after the maternal aunt decided not to seek legal custody but rather to seek to adopt the child. There was no motion for legal custody before the court.

**{¶26}** The third best interest factor requires consideration of the custodial history of the child. S.R.T. was never in the custody of Mother, but rather remained in the custody of CSB throughout this case. S.R.T. resided in a foster home until the permanent custody hearing. At that time, the child's placement was changed to Shawana Alexander and her husband, the maternal aunt and uncle who had been approved for foster and adoptive placement pursuant to an interstate home study and who expressed a willingness to adopt S.R.T.

**{¶27}** As to the fourth best interest factor, there was evidence before the trial court that the child was in need of a legally secure placement and that it could only be achieved by an award of permanent custody. During the trial court proceedings, the maternal aunt and her husband sought placement of the child. The couple, who reside in Beckley, West Virginia, was approved in a home study. Ms. Alexander had an overnight visit with the child before the permanent custody hearing, and it reportedly went well. The only other relative to express any interest in a long-term placement was Father's adult daughter, who resides in the Akron area. She was approved for placement, but later withdrew from consideration due to her concern with Mother's behavior. She reported being harassed by Mother with telephone calls and text messages and she concluded that safety concerns related to Mother's instability and behaviors were too great for her to continue to consider accepting placement.

{¶28} Ms. Alexander, the maternal aunt of the child, testified at the permanent custody hearing. She and her husband have a sixteen-year-old child and a twenty-year-old child. Ms. Alexander testified that she works almost fulltime, is active in her community and church, has the financial means to provide for S.R.T., and has plans for daycare and to address the medical needs of the child. Ms. Alexander explained that she had a relationship with a caseworker in West Virginia who would make home visits once or twice a week. Ms. Alexander initially testified that, whether she was granted legal custody or adopted the child, she was willing to allow Mother to continue to visit with S.R.T. and would attempt to allow the child to maintain a relationship with her siblings as well. While Ms. Alexander originally indicated that she was willing to accept legal custody as opposed to seeking adoption, after gaining a better understanding of legal custody, she concluded that she would only seek to adopt S.R.T. She appreciated that Mother had been through a great deal, but she did not want to "play tug of war" with Mother and wanted S.R.T. to have a stable environment. For her part, Mother was concerned that if the trial court granted permanent custody and Ms. Alexander successfully pursued adoption, Ms. Alexander might not allow her to visit with her child. However, as a consequence of Ms. Alexander's unwillingness to seek legal custody, an award of legal custody to her was not an option for the trial court. Consequently, Mother's argument that the trial court should have granted legal custody to the maternal aunt is without merit.

{¶29} The caseworker testified that permanent custody is in the best interest of the child. She stated that Mother has not demonstrated stability in her emotional health and has not been consistent in attending counseling. She noted that Mother did not address domestic violence and is still involved with Father, who has not demonstrated any case plan compliance. She stated that the child needs a stable environment with a caregiver who has a stable lifestyle. She

recommended a long-term placement with the maternal aunt until permanency is finally resolved. She believes this option would more likely assure the child's safety and would put the aunt and her husband in a better position to provide the child with security in terms of a permanency plan.

{¶30} Finally, the trial court was also entitled to consider the prior terminations of Mother's parental rights to seven other children in assessing the best interest of S.R.T. *See* R.C. 2151.414(D)(1)(e).

{¶31} The record demonstrates that the trial court did not clearly lose its way and create a manifest miscarriage of justice when it terminated the parents' parental rights and placed S.R.T. in the permanent custody of CSB. *See Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. Mother's sole assignment of error is overruled.

III.

{¶32} Mother's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

WHITMORE, J.
HENSAL, J.
CONCUR.

APPEARANCES:

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RACHEL M. RICHARDSON, Assistant Prosecuting Attorney, for Appellee.

LAURIE BOVEINGTON, Guardian ad Litem.