[Cite as *In re A.L.*, 2016-Ohio-8504.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: A.L.

C.A. Nos.   28345
                   28347

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.      DN15-10-760

DECISION AND JOURNAL ENTRY

Dated: December 30, 2016

HENSAL, Judge.

{¶1}    Appellants, Carrie L. ("Mother") and Michael L. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights to their minor child, A.L., and placed her in the permanent custody of Summit County Children Services ("CSB").  This Court affirms.

I.

{¶2}    Appellants are the unmarried parents of A.L., the child who is the subject of this appeal and who was born September 9, 2015.  Mother has two older children and her parental rights were previously terminated with respect to them.  Father is the biological parent of one of those children and his parental rights were terminated to that child as well.  *See In re R.L.,* Summit C.P., Juv.Div. Nos. DN12-09-0623, DN12-09-0624 (Dec. 31, 2013), affirmed *In re R.L.*, 9th Dist. Summit Nos. 27214, 27233, 2014-Ohio-3117.

{¶3} The present case began on October 28, 2015, with the filing of a dependency complaint. The complaint alleged that the parents have a history of homelessness and serious mental health issues, that Father exhibited threatening behavior to CSB caseworkers during the family's prior dependency case, and that Mother has developmental delays that inhibit her ability to independently parent a child. The complaint further alleged that the family was about to lose its housing due to a lack of funds and would soon become homeless. According to the complaint, the police conducted a child welfare check and talked to the parents. CSB attempted to follow up, but the parents refused to speak with agency representatives. The agency initiated the present suit out of concern for the safety of the infant. At CSB's request, the agency was granted emergency temporary custody of the seven-week-old child.

{¶4} At adjudication, the parents stipulated to the factual allegations of the complaint and to the dependency of the child. Upon disposition, the court granted temporary custody of A.L. to CSB and adopted the case plan proposed by the agency. The case plan required both parents to obtain stable housing, address their mental health issues, attend parenting classes, and complete a chemical dependency evaluation. The parents were offered weekly visitation. As of January 2016, they were required to attend separate visits because of their propensity to argue during visits. In addition, Father was advised to not become involved in any further law enforcement issues.

{¶5} The trial court granted CSB's request for an order granting a reasonable efforts bypass pursuant to R.C. 2151.419(A)(2) based on the prior involuntary termination of the parents' parental rights to siblings of A.L. *See* R.C. 2151.419(A)(2)(e). A certified copy of the journal entry was submitted as evidence of the termination of Mother's parental rights to R.L. and S.L., and Father's parental rights to S.L. *See In re R.L.,* Summit C.P., Juv.Div. Nos. DN12-

09-0623, DN12-09-0624, affirmed *In re R.L.*, 2014-Ohio-3117. Based on the reasonable efforts bypass, CSB was no longer required to make reasonable efforts to return the child to her parents. *See* R.C. 2151.419(A)(2) and *In re L.M.*, 9th Dist. Summit No. 26772, 2013-Ohio-2669, ¶ 6.

{¶6} In due course, CSB moved for permanent custody of A.L. Following a hearing, the trial court granted permanent custody of the child to CSB and terminated the parents' parental rights to her. Each parent has appealed, and each has assigned one error for review.

## II.

### FATHER'S ASSIGNMENT OF ERROR

THE TRIAL COURT'S GRANTING OF SUMMIT COUNTY [CHILDREN] SERVICES MOTION FOR PERMANENT CUSTODY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶7} Father claims that the judgment of the trial court, granting permanent custody of A.L. to the agency, is against the manifest weight of the evidence. In general, before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶8} However, the Revised Code also provides that when "[t]he parent from whom the child was removed has had parental rights involuntarily terminated with respect to a sibling of

the child pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code[,]" the juvenile court "shall make a determination that the agency is not required to make reasonable efforts to * * * eliminate the continued removal of the child from the child's home, and return the child to the child's home[.]" R.C. 2151.419(A)(2)(e) and R.C. 2151.419(A)(2).

{¶9}  Furthermore, "[w]hen the trial court grants a motion for a reasonable efforts bypass pursuant to R.C. 2151.419(A)(2), * * * R.C. 2151.413(D)(2) and R.C. 2151.414(B)(2) apply." *In re S.R.T.*, 9th Dist. Summit No. 27978, 2016-Ohio-788, ¶ 8, citing *In re A.U.,* 2d Dist. Montgomery No. 22264, 2008-Ohio-186, ¶ 17.  As relevant here, R.C. 2151.413(D)(2) provides that when a motion for reasonable efforts bypass is granted, the agency is required to file a motion for permanent custody.  *See S.R.T* at *¶* 8*,* citing *In re W.W.,* 1st Dist. Hamilton No. C-110363, 2011-Ohio-4912, ¶ 49.  And finally, R.C. 2151.414(B)(2) provides that the trial court "shall grant permanent custody of the child to the [agency]" if the court determines that: (1) the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent, in accordance with R.C. 2151.414(E) and (2) permanent custody is in the child's best interest, in accordance with R.C. 2151.414(D).  *See In re J.D.*, 2d Dist. Montgomery No. 26588, 2015-Ohio-4114, ¶ 48-49.

{¶10} In the present case, CSB moved for permanent custody of the child, while indicating that the parents had their parental rights terminated with respect to siblings of the child and that the trial court had relieved the agency of making reasonable efforts towards reunification.  In granting the motion for permanent custody, the trial court found that A.L. could not be returned to either parent within a reasonable time or should not be placed with either of them.  *See* R.C. 2151.414(B)(2).  In support of that finding, the trial court determined, inter alia,

that siblings of A.L. were permanently removed from the parents' custody for similar concerns in 2013. *See* R.C. 2151.414(E)(11).

{¶11} On appeal, Father does not dispute that each parent's parental rights were terminated as to siblings of A.L. Father is nevertheless statutorily entitled to counter this fact by providing "clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." R.C. 2151.414(E)(11). In other words, Father may challenge the determination that the child cannot or should not be placed in his custody within a reasonable time, by clearly and convincingly establishing that he can now "provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." *See* R.C. 2151.414(B)(2) and R.C. 2151.414(E)(11). Upon careful review of the record, we cannot conclude that Father has met this burden.

{¶12} In the prior case, the children came into care due to the parents' homelessness and their serious and untreated mental health concerns. The caseworker from that case testified in the current case and explained that the parents never obtained housing, only sporadically attended mental health treatment sessions, and were never able to remedy the concerns that brought the children into custody. Ultimately, the trial court found that the parents' chronic and uncontrolled mental illnesses prevented them from providing the children with a permanent and safe home environment. *In re R.L.,* Summit C.P., Juv.Div. Nos. DN12-09-0623, DN12-09-0624, affirmed *In re R.L.*, 2014-Ohio-3117.

{¶13} The present case began with similar concerns: homelessness and mental health issues. The family had been living on the streets, in shelters, and briefly in a hotel. There is no evidence that the parents ever obtained stable housing together. During the present case, the

parents ended their relationship. Father's counselor believed Father had been staying at his place of employment, with friends, with his stepmother, and, most recently, in a trailer in Portsmouth, Ohio. Mother claimed that she obtained an apartment two weeks before the hearing, but the apartment had no stove, refrigerator or sink, and she had not yet obtained furnishings. Upon this record, neither parent has established stable housing.

{¶14} In addition, neither parent has established that they have addressed their mental health issues such that they can provide a legally secure permanent placement and provide adequate care for the health, welfare, and safety of A.L. For his part, Father was diagnosed with a schizoaffective disorder bipolar type, a personality disorder with antisocial traits, and a history of cannabis abuse. The evaluating psychologist explained that Father's thought processes were disorganized and tangential, and that he had delusions of grandeur, believing himself to be the smartest person on earth. She recommended that Father obtain a psychiatric evaluation. She also recommended that he complete parenting education and mental health counseling.

{¶15} The record reveals that Father did not successfully address his case plan objectives regarding mental health. The caseworker said that Father did not complete a chemical dependency evaluation, refused medication, refused to provide his address to his case manager, and declined case management services. He attended counseling once or twice a month for four months, but often left before the sessions were finished, claiming he had an emergency telephone call and was otherwise not very forthcoming in his communications. His counselor reported no progress except in developing a rapport between them. She indicated that Father was not fully invested in counseling and was resistant to accepting help from service providers. The caseworker observed no progress on Father's mental health issues since the first case.

{¶16} Mother also failed to demonstrate that she had successfully addressed her mental health issues. Mother has been diagnosed with post-traumatic stress, a personality disorder with dependent and borderline traits, mild mental retardation, and cocaine dependence in reported remission. Her evaluating psychologist testified that Mother had a lengthy history of instability in employment, housing, relationships, and mental health, and recommended that Mother engage in counseling, monthly medication management, and parenting classes. Mother currently has a case manager who assists her with symptom monitoring and links her to community resources. Although she believes Mother is presently "able to function on a day-to-day basis without assistance[,]" she nevertheless contacts Mother two or three times a month and assists her with items she needs on a daily basis, such as housing, food, household goods, furniture, and clothing, and helps her address the "stressors" in her life. The psychologist recognized that Mother has "needed extra assistance * * * throughout her life" in order to "carry out her daily life responsibilities" and believed that Mother would require on-going assistance with "the day-to-day stuff" if she is awarded custody of her children. Mother attended counseling inconsistently, and she continues to struggle with the same issues.

{¶17} Father told the caseworker that he was concerned about Mother, and the people she "was hanging out with." He told the caseworker that Mother even had a plan to "steal" all three of her children back if she lost A.L., and Father claimed he refused to be part of it.

{¶18} Based upon this record, Father has not provided clear and convincing evidence that he or Mother could currently provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child. *See* R.C. 2151.414(E)(11). Thus, the record supports a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. *See* R.C. 2151.414(B)(2).

{¶19} The trial court also found that permanent custody was in the best interest of the child. *See* R.C. 2151.414(B)(2) and R.C. 2151.414(D)(1). When making such a determination, the juvenile court must consider all the relevant factors, including those enumerated in R.C. 2151.414(D)(1): the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7) to (11) apply. R.C. 2151.414(D)(1)(a)-(e). "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." *In re Smith*, 9th Dist. Summit No. 20711, 2002 WL 5178, *3, (Jan. 2, 2002); *see also In re Palladino*, 11th Dist. Geauga No. 2002-G-2445, 2002-Ohio-5606, ¶ 24. *See* R.C. 2151.414(B)(2) and R.C. 2151.414(D).

{¶20} The first of the best interest factors requires consideration of the relevant personal interactions and interrelationships of the child. R.C. 2151.414(D)(1)(a). There is evidence in the record regarding the child's relationship with Mother and Father.

{¶21} Father did not spend much time developing a relationship with A.L. The caseworker reported that Father's attendance at early visits was inconsistent, but she was able to observe him with A.L. during some of the visits. She explained that Father could be loving and affectionate at times, but he also came to some visits in an agitated state. He was said to escalate quickly, and the caseworker was not always able to calm him. The caseworker stated that Father had unrealistic expectations regarding child development. Father took a parenting class during the first case, but refused to take additional parenting training during the present case. In early January 2016, Father asked to be taken off the visitation schedule entirely and he attended no visits with A.L. after that time.

**{¶22}** The caseworker also addressed Mother's relationship with the child. The caseworker said Mother appears to love A.L. and is "trying to learn[,]" but Mother frequently needed prompts to lift the baby's head, to feed or change the baby, and to interact or focus on her. During visits, Mother would often talk to the caseworker or other adults in the room about her own life instead of focusing on the child. According to the caseworker, Mother completed a parenting class, but has not demonstrated that she is able to apply what she has been taught. The caseworker said that Mother has not even achieved a degree of progress that would warrant a decrease in the level of supervision at her visits.

**{¶23}** The caseworker also expressed concerns about Mother's insight and judgment. For example, according to the caseworker, Mother recently told Father to put a bullet in his mouth and die. When questioned, Mother explained that Father has hepatitis and asthma, and he did not want to live anyway. The caseworker also reported that after Mother broke up with Father, she went from not wanting to be in another relationship - out of concern for the child's well-being and stability - to being "totally head over heels in love" with a new boyfriend within the space of one week. The caseworker did not believe Mother understood how her decisions would affect the safety and well-being of her child long-term.

**{¶24}** The guardian ad litem reported that A.L. is healthy and developing appropriately in the care of the foster parents. Those foster parents have adopted A.L.'s two siblings and are interested in adopting A.L. if that becomes a possibility.

**{¶25}** The record does not reflect any evidence of a continuing positive relationship between A.L. and any extended family members.

**{¶26}** The wishes of A.L. were conveyed by the guardian ad litem who has worked with the family for nearly three years, including two years of the prior case. *See* RC.

2151.414(D)(1)(b). With respect to Father, the guardian ad litem indicated that Father has significant untreated mental health diagnoses and made the choice to not engage in case management services. He has, in fact, had little involvement with the case, and he has had no contact at all with A.L. for six months. Father reportedly told the guardian ad litem that he did not want to become emotionally involved with the child only to have her taken away.

{¶27} As to Mother, the guardian ad litem stated that he has observed no improvement in Mother's parenting ability despite her attendance in parenting classes, and he does not believe that Mother has the ability to parent A.L. He cited her limited understanding of parenting and developmental needs of children. He expressed concern with Mother's decision-making and judgment, and he indicated that Mother has continued to struggle with the ability to maintain a household. The guardian ad litem believes that the same problems that existed for Mother in last case have continued. Accordingly, the guardian ad litem concluded that it is in the best interest of the child to be placed in the permanent custody of the agency. He believes that the child is in need of permanency and recommends that she be placed in the permanent custody of CSB.

{¶28} The custodial history of the child is that she was removed from her parents' care at seven weeks. Since then, she has resided with the same foster family that adopted the child's siblings. *See* R.C. 2151.414(D)(1)(c). Mother and Father were aware that A.L.'s foster parents were the adoptive parents of their other children and occasionally saw the parents at the visitation site. Mother and Father repeatedly requested updates, pictures, and to talk to the children from whom their parental rights were terminated. They became angry when they were unable to obtain such information. Father, in particular, exhibited anger and aggression towards the foster parents.

{¶29} As to the fourth of the best interest factors, there was evidence before the trial court that the child was in need of a legally secure permanent placement and that no relatives had come forward with an interest in custody or placement. *See* R.C. 2151.414(D)(1)(d). The trial court found that permanent custody is the only means to provide this child with a legally secure permanent placement.

{¶30} As to the fifth of the best interest factors, each parent had had their parental rights terminated with respect to a sibling of A.L. *See* R.C. 2151.414(D)(1)(e).

{¶31} The record does not demonstrate that the trial court clearly lost its way and created a manifest miscarriage of justice in reaching its judgment. *See Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. Consequently, we conclude that the trial court did not err in terminating the parents' parental rights and in placing A.L. in the permanent custody of CSB. Father's assignment of error is overruled.

## MOTHER'S ASSIGNMENT OF ERROR

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT PLACED A.L. IN THE PERMANENT CUSTODY OF SCCS RATHER THAN GRANTING MOTHER A SIX-MONTH EXTENSION.

{¶32} Mother contends that the trial court abused its discretion when it granted permanent custody of the child to CSB rather than granting Mother a six-month extension of temporary custody. In support of her position, Mother claims that an extension would be in the best interest of the child, that she made significant progress on her case plan, and that there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension. *See* R.C. 2151.415(D). Upon review of the record, this Court finds no basis upon which to conclude that the trial court abused its discretion in failing to grant a six-month extension of temporary custody.

{¶33} First, the guardian ad litem testified that an extension would not be in the best interest of the child because of the need for permanence and he believed an extension would have a negative effect on her. Second, Mother has not challenged the finding that her parental rights were involuntarily terminated as to siblings of A.L. and, as demonstrated above, she has not established that she can provide a legally secure permanent placement and adequate care for the health, welfare and safety of the child. *See* R.C. 2151.414(E)(11). The same concerns that existed in the prior case continued to exist in the current case. There is no evidence that she has overcome her mental health concerns. Mother does not have stable housing and has not demonstrated any improvement in parenting skills. She constantly requires prompts to address the basic needs of the child and does not focus on her child when she has had that opportunity.

{¶34} Both the caseworker and guardian ad litem specifically opposed an extension of temporary custody, did not believe sufficient progress had been made to justify an extension, and did not believe reunification would occur within six months, particularly given the significant issues that Mother presents. The trial court found that it is unlikely that reunification would occur within the term of an extension of temporary custody.

{¶35} The record fails to demonstrate that the trial court abused its discretion in not granting an extension of temporary custody. Mother's assignment of error is overruled.

III.

{¶36} Father's assignment of error is overruled. Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

AVIVA WILCHER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.