[Cite as *In re K.J.*, 2019-Ohio-123.]

STATE OF OHIO          )               IN THE COURT OF APPEALS
                           )ss:        NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

IN RE: K.J.                           C.A. No.     29149

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN17-04-000278

DECISION AND JOURNAL ENTRY

Dated: January 16, 2019

CALLAHAN, Presiding Judge.

{¶1} Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her child K.J., and placed the child in the permanent custody of Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

{¶2} Mother is the biological mother of K.J. (d.o.b. 7/23/09). Father voluntarily relinquished his parental rights to the child, and he is not a party to this appeal.

{¶3} Mother was the legal custodian of K.J. until Mother was placed on probation for a criminal offense. Because it was uncertain whether she would ultimately have to serve prison time for the offense, Mother's probation officer had her execute a document placing the child in the temporary custody of Father. Father had physical possession of the child for the three years preceding her removal from the home.

**{¶4}** In April 2017, the Akron Police Department received a call based on numerous alleged concerns for a welfare check of the child in her home. Father was not at home at the time, but Mother and her boyfriend were there with the child. The child and her clothing were dirty, and she was infested with lice. After further finding filth, the lack of kitchen and bathroom facilities, and growing marijuana in the home, the police took K.J. into protective custody pursuant to Juv.R. 6. Mother and her boyfriend were charged with child endangering. CSB obtained an emergency order of temporary custody of the child. At shelter care, both parents waived their rights to a hearing and stipulated to a finding of probable cause for the continued removal of the child.

**{¶5}** CSB filed a complaint, alleging that K.J. was an abused, neglected, and dependent child. At adjudication, both Mother and Father waived their rights to a hearing. The magistrate adjudicated the child abused, neglected, and dependent as alleged in the complaint. Neither parent filed objections. The juvenile court adopted the magistrate's decision on adjudication. Thereafter, Mother and Father both waived their rights to a dispositional hearing before the magistrate and stipulated that K.J. would be placed in the temporary custody of CSB. The juvenile court adopted the dispositional order without objection. The agency's case plan was adopted as the order of the court.

**{¶6}** At the first review hearing three months later, both parents stipulated that the child would remain in CSB's temporary custody. Mother and Father were to have supervised visitation with K.J. as the parties might agree. The magistrate held two additional review hearings, maintaining the child in the agency's temporary custody and the parents' supervised visitation, after hearing the testimony of the CSB caseworker.

{¶7} After the case had pended for eleven months, Father and Mother each filed a motion for a six-month extension of temporary custody, and CSB filed a motion for permanent custody. Shortly thereafter, Mother and Father each filed their respective motions for legal custody. In addition, Mother filed a request for an in camera interview of the child. The juvenile court granted that request and interviewed the child in chambers with the guardian ad litem present.

{¶8} Immediately prior to the commencement of the permanent custody hearing, Father surrendered his parental rights. The hearing proceeded as to the agency's and Mother's motions. At the conclusion of the hearing, the juvenile court issued its judgment, granting CSB's motion for permanent custody and terminating Mother's parental rights. Mother filed a timely appeal in which she raises three assignments of error for review. This Court addresses some assignments of error out of order to facilitate review.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN GRANTING PERMANENT CUSTODY AS THE TRIAL COURT FAILED TO COMPLY WITH R.C. 2151.28(L), WHEN IT ISSUED ITS DEPENDENCY ORDERS.

{¶9} Mother argues that the juvenile court erred by failing to comply with the requirements of R.C. 2151.28(L) when it adjudicated K.J. a dependent child. This Court disagrees.

{¶10} Juv.R. 40(D)(3)(b)(iv) provides:

Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).

Accordingly, "'[w]hen a party fails to raise an issue in the party's objections to the magistrate's decision, it may not be raised for the first time on appeal.'" *In re C.C.-L.*, 9th Dist. Summit No. 28666, 2017-Ohio-9296, ¶ 23, quoting *Varner v. Varner*, 170 Ohio App.3d 448, 2007-Ohio-675, ¶ 22 (9th Dist.). Because Mother did not file objections to the magistrate's decision adjudicating K.J. a dependent child, she has forfeited all but plain error on appeal. *See* Juv.R. 40(D)(3)(b)(iv).

> In the criminal context, plain error does not exist unless it can be said that but for the error, the outcome of the trial would have been different and that reversal is necessary to prevent a manifest miscarriage of justice. *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, ¶ 57. The civil plain error standard may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.

(Internal quotations omitted.) *In re S.G.*, 9th Dist. Summit No. 27428, 2015-Ohio-2503, ¶ 11.

{¶11} This Court has not yet determined whether the criminal or civil plain error standard applies in dependency, neglect, and abuse cases. *In re K.C.*, 9th Dist. Lorain No. 17CA011135, 2017-Ohio-8779, ¶ 29, citing *In re S.G.* at ¶ 11. As Mother cannot prevail here under either standard, we decline to make that determination in this case.

{¶12} R.C. 2151.28(L) requires the juvenile court to make certain written findings of fact and conclusions of law in its judgment when it adjudicates a child to be dependent. Included in those findings must be "specific findings as to the existence of any danger to the child and any underlying family problems that are the basis for the court's determination that the child is a dependent child." *Id.*

{¶13} Both Mother and Father waived their rights to an adjudicatory hearing at which CSB would have had the burden of proving the allegations in the complaint by clear and convincing evidence. *See In re T.C.*, 9th Dist. Wayne Nos. 18AP0021 and 18AP0022, 2018-

Ohio-4369, ¶ 15, citing Juv.R. 29(F) and R.C. 2151.35(A)(1). By waiving their rights to a hearing, Mother and Father effectively stipulated to a finding of all factual allegations in the complaint. Assuming without deciding that the juvenile court could not proceed with a permanent custody hearing in the absence of an adjudication judgment which complied with the mandates of R.C. 2151.28(L), the allegations in the complaint supported the statutorily required findings. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR III

> THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT TERMINATED MOTHER'S PARENTAL RIGHTS AS THE EVIDENCE WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶14} Mother argues that the juvenile court's award of permanent custody of K.J. to CSB was against the manifest weight of the evidence. This Court disagrees.

{¶15} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶16} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the

child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). The best interest factors include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see also In re R.G.*, 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. In this case, Mother limits her challenge to the juvenile court's determination that CSB satisfied the first prong of the permanent custody test. Mother does not make any argument regarding the best interest of the child.

{¶17} In its motion for permanent custody, CSB alleged as its sole first-prong ground that K.J. could not be placed with her parents within a reasonable time or should not be placed with her parents pursuant to R.C. 2151.414(B)(1)(a). In support, the agency alleged five Subsection (E) factors. Because Father voluntarily surrendered his parental rights, we focus solely on the allegations relevant to Mother. Specifically, CSB alleged that (1) despite reasonable case planning and diligent efforts by the agency, Mother continuously and repeatedly failed to substantially remedy the conditions that caused the child's placement outside the home

pursuant to R.C. 2151.414(E)(1); (2) Mother has a chronic mental illness and/or chemical dependency problem that is so severe that Mother is unable to provide the child with an adequate permanent home at present and, as anticipated, within one year pursuant to R.C. 2151.414(E)(2); (3) Mother demonstrated a lack of commitment toward the child pursuant to R.C. 2151.414(E)(4); (4) Mother was unwilling to provide for the basic needs of the child or protect the child from abuse or neglect pursuant to R.C. 2151.414(E)(14); and (5) any other relevant factor applied pursuant to R.C. 2151.414(E)(16).

{¶18} After the permanent custody hearing, the juvenile court found that CSB had met its burden of proving that K.J. could not be reunified with Mother within a reasonable time or that the child should not be returned to Mother. The lower court premised its first-prong conclusion on findings that Mother had failed to substantially remedy the conditions that led to the child's removal, and that Mother continued to suffer from chronic mental health and chemical dependency issues, the severity of which rendered Mother unable to provide K.J. with an adequate permanent home in the foreseeable future.

{¶19} R.C. 2151.414(E) provides, in relevant part:

In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot by placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the

8

child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the [permanent custody] hearing * * *[.]

{¶20} Although K.J. was removed from Father's home, Mother and her boyfriend had also been living in that home for three months at the time of the child's removal. Neither Mother nor her boyfriend was named on the lease, and Mother had not provided a home for the child for three years. The home was "deplorable," lacking a kitchen, sink, refrigerator, and working toilet and bathtub. The inhabitants used a bucket for a toilet. The child was filthy and infested with lice. She had rarely attended school since Mother joined the household. There was a history of domestic violence between Father and Mother, with Mother being the physical aggressor. Both Mother and her boyfriend had threatened home inhabitants with physical violence. Mother admitted to having diagnosed mental health issues which she addressed, in part, with marijuana. Mother was growing marijuana in the home. At the time of the child's removal, there were pending warrants for Mother's arrest based on theft and drug paraphernalia charges.

{¶21} CSB established a case plan to help Mother address the issues that hindered her ability to provide a safe and stable home for K.J. Under the terms of the case plan that the juvenile court adopted as its order, Mother was required to (1) obtain a chemical dependency assessment and follow all recommendations for treatment, including attending AA or NA meetings, counseling, intensive outpatient treatment, inpatient treatment, drug screens, and a mental health assessment; (2) obtain a psychological/parenting assessment or mental health

assessment and follow all treatment recommendations, including attending counseling, additional testing, anger management counseling, parenting education, and being medication-compliant; (3) demonstrate the ability to meet her own and the child's basic needs by maintaining an adequate income, a home free from hazards, and good family hygiene; and (4) obtain an anger management assessment and follow all treatment recommendations.

{¶22} Mother argues that CSB failed to meet its obligation to implement reasonable case planning, i.e., to tailor Mother's case plan objectives to address the conditions that initially gave rise to the removal of K.J. from the home. In addition, Mother argues that CSB failed to use diligent efforts to assist her by failing to allow her adequate time to address her issues. Specifically, Mother argues that CSB prematurely filed its motion for permanent custody after Mother had only had eight months to work on her case plan objectives.

> R.C. 2151.414(E)(1) requires that children services agencies engage in reasonable case planning and diligent efforts to remedy the concerns at issue. In addition to setting appropriate case plan goals for parents engaged in custody actions, children services agencies must, in good faith, provide services and engage in efforts that are reasonable calculated to succeed in reunifying parents and their children. *See, e.g.*, *In re C.E.*, 3d Dist. Hancock Nos. 5-09-02 and 5-09-03, 2009-Ohio-6027, ¶ 23[ and] 33. * * * In addition, it is fundamental that parents must be afforded a reasonable amount of time to accomplish their goals.
>
> * * *
>
> Case plans are the tools that children services agencies use to set forth the goals of parents to allow for the return of children to their parents. *In re C.E.*, 3d Dist. Hancock Nos. 5-09-02 and 5-09-03, 2009-Ohio-6027, ¶ 15. Their central purpose is to remedy the problems that caused the children's removal and to accomplish the reunification of parents and children. In so doing, the agency must take into consideration the individual circumstances of each case.

*In re M.P.*, 9th Dist. Lorain No. 14CA010678, 2015-Ohio-2226, ¶ 30 and 48.

{¶23} With regard to Mother's argument that CSB did not properly tailor her case plan objectives to allow her to remedy the conditions that resulted in the child's placement outside the home, this Court has found no objection by Mother below to the juvenile court's adoption of the

agency's case plan and amended case plan. "A party may not object to matters regarding case plan implementation for the first time on appeal." *In re N.L.*, 9th Dist. Summit No. 27784, 2015-Ohio-4165, ¶ 33, citing *In re M.Z.*, 9th Dist. Lorain No. 11CA010104, 2012-Ohio-3194, ¶ 18. As Mother failed to challenge her case plan objectives below by objecting to the adoption of the case plans as the orders of the court, at a time when the juvenile court could have considered her arguments, we decline to consider them in the first instance. *See In re N.L.* at ¶ 33, citing *In re H.W.*, 9th Dist. Summit No. 27730, 2015-Ohio-3018, ¶ 10.

{¶24} As to Mother's argument that CSB did not use diligent efforts because the agency did not allow her a reasonable time to accomplish her objectives, this Court disagrees. In addition to the eight months Mother had to work on remedying the conditions that led to the removal of the child, she had another four-and-a-half months prior to the commencement of the permanent custody hearing in which to try to accomplish her objectives. Mother does not claim that CSB stopped providing services to her after the agency filed its motion for permanent custody. In fact, the record evidences the ongoing services provided to Mother, as well as the caseworker's accommodations to allow Mother to work with providers with whom she had already established a relationship. Accordingly, CSB facilitated Mother's participation in services designed to help her remedy the concerns regarding Mother's ability to parent the child appropriately and for a reasonable period of time.

{¶25} Substantively, the clear and convincing evidence adduced at the permanent custody hearing supported the juvenile court's finding that Mother continuously failed to substantially remedy the conditions that caused the child to be placed outside her home. She does not dispute that she has suffered from mental health issues throughout much of her life. Mother reported that she was diagnosed with bipolar disorder. She suffers from major

depression with psychosis and has experienced both auditory and visual hallucinations. The mental health professionals who worked with Mother reported that she is not always medication-compliant. For a substantial portion of this case, Mother refused to take her prescribed medication because she was attempting to become pregnant. Nevertheless, Mother continued to use marijuana on a regular basis, and was forthright in her assertion that she did not plan to stop smoking it. Her psychiatrist testified that marijuana use was contraindicated because it negatively impacted the efficacy of Mother's prescription medications. Mother's clinical psychologist testified that she counseled Mother not to use marijuana because of the likelihood that it would exacerbate her symptoms of depression and anxiety.

{¶26} Although Mother made efforts to attend appointments and was generally cooperative with her service providers when she did attend, the testimonial consensus was that Mother continued to lack insight into her mental health issues, her aggressive behaviors, and the insensitivity she exhibited in her relationship with K.J. Although Mother attended every scheduled visitation with the child, K.J. requested that telephone communication between her and Mother cease because it was too stressful for the child who was afraid that Mother would call her names or make inappropriate comments to her. The child's counselor discussed the severe trauma the child suffered while in her parents' care, but Mother evidenced little understanding of the effect that environment had on K.J.

{¶27} Mother self-reported episodes of intense anger to her service providers. She admitted ongoing anger with the CSB caseworker, who testified that she ceased making home visits to Mother's home after Mother threatened her with physical violence. Mother's clinical psychologist expressed current concerns regarding Mother's inability to manage her anger,

aggression, and mood stability based on the nature of the character pathology associated with Mother's personality disorders.

{¶28} Mother's counselor at Greenleaf Family Center echoed the concerns of the other mental health professionals. After performing a diagnostic assessment, the counselor determined that Mother needed to develop appropriate parenting skills, substance use skills, and anger management skills. Because of Mother's anxiety and general irritability around other people, the counselor worked individually with Mother. The counselor testified that it became futile to attempt to address Mother's parenting and substance abuse issues when Mother reported that there were no problems in her relationship with K.J. and that she had no desire to stop using marijuana. Accordingly, the counselor focused efforts on Mother's anger issues. Nevertheless, the counselor reported little success because Mother blamed Father and CSB for any problems. Moreover, Mother's boyfriend/fiancé always attended all of Mother's appointments at her insistence, even though the counselor's notes indicated that she told Mother that it would be helpful to meet with her alone.

{¶29} A CSB social services aide who supervised some of Mother's visitations with the child testified regarding some inappropriate behavior by Mother. For example, Mother would engage in "pretty extensive" tickling of the child. Mother disregarded the child's pleas that Mother stop the tickling. In addition, although the agency told Mother to bring reasonably sized, healthy meals for the child because she was obese, Mother continued to bring heavy, starchy foods in portions more suitable for a grown man. The aide reported that Mother let the child eat a piece of cake that was large enough for three adults to share. Mother also engaged in inappropriate conversations with the child, including telling the child about Mother's pregnancy in the early stages and her subsequent miscarriage. Finally, Mother consistently brought her

boyfriend/fiancé to visitations even though he was not supposed to be there and the child did not want to interact with him.

{¶30} The CSB caseworker testified that Mother had not made sufficient progress on her case plan objectives. Mother lived in three or four residences during the case. The caseworker had not visited Mother's most recent home due to Mother's multiple threats of violence against her, but Mother reported that she had no furniture in the home. Mother continued to live with her boyfriend/fiancé who she asserted posed no threat to the child despite his extensive criminal history, including acts of violence; a history of substance abuse; suspected mental health issues; as well as Mother's assertion that she would never leave the child alone with her boyfriend/fiancé, although she refused to explain why not. The child had expressed fear of Mother's boyfriend/fiancé based on instances of domestic violence between Mother and the man, and certain acts by the boyfriend/fiancé that made the child feel uncomfortable. Even though Mother denied any incidents of domestic violence, she admitted to the caseworker that she sleeps with a hammer under her pillow and that both she and her boyfriend/fiancé regularly carry weapons.

{¶31} Mother claimed to have four jobs during the pendency of the case, but she failed to provide any documentation to the caseworker to substantiate her claim that she was currently employed. Mother continues to struggle to maintain employment because she becomes easily frustrated and angry with people.

{¶32} The caseworker concluded that Mother has not complied with her case plan objectives. Despite attending appointments for services, Mother continues to demonstrate a lack of insight regarding her mental health and substance abuse issues, and she has not been able to implement skills to control her anger. The guardian ad litem echoed the concerns of the

caseworker and other professionals in this case. The guardian acknowledged that, although Mother had worked very hard on her case plan objectives, Mother had not been able to demonstrate successful completion of any of them. The guardian opined that, given Mother's demonstrated ongoing issues, an extension of temporary custody would not allow Mother to succeed in substantially remedying the conditions that initially resulted in K.J.'s removal from her home.

{¶33} Based on clear and convincing evidence establishing ongoing concerns about Mother's ability to provide a nurturing, safe, and healthy environment for K.J, notwithstanding the agency's reasonable case planning and diligent efforts, Mother failed continuously and repeatedly to substantially remedy the conditions which caused the child to be placed outside Mother's home. *See* R.C. 2151.414(E)(1). Mother had been receiving mental health services prior to CSB's involvement, and the agency allowed her to continue working with some of the providers with whom she was comfortable. Mother missed some appointments and failed to follow the recommendations of the professionals when she did attend. Despite the recommendations of multiple professionals that she stop using marijuana, Mother repeatedly asserted that she had no intention of doing so. Despite her psychiatrist's recommendation that she take her medications as prescribed, Mother routinely failed to comply because she was trying to become pregnant. Despite her psychological assessment that identified multiple issues for her to address, Mother denied having any problems with parenting, her relationship with the child, and substance abuse. Accordingly, her clinical psychologist could not even begin working with her on those issues. Finally, despite recognizing her tendency to quickly become angry and aggressive with other people, Mother failed to develop the skills necessary to manage her anger. Under these circumstances, the juvenile court's finding that K.J. could not be placed with Mother

within a reasonable time or should not be placed with Mother was not against the manifest weight of the evidence. Mother's third assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN GRANTING PERMANENT CUSTODY BASED, IN PART, UPON AN IN-CAMERA HEARING WITH THE CHILD IN VIOLATION OF MOTHER'S DUE PROCESS RIGHT OF CONFRONTATION.

**{¶34}** Mother argues that the juvenile court erred by relying on information received during an in camera interview with the child. This Court disagrees.

**{¶35}** As an initial matter, R.C. 2151.414(D)(1)(b) allows the juvenile court to consider "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child[,]" when determining whether an award of permanent custody would be in the child's best interest. Mother concedes this point of law.

**{¶36}** Mother challenges the use of information gleaned from the juvenile court's interview with the child on several bases. First, she argues that the court could not rely on that information to support its first-prong finding that K.J. could not be returned to Mother within a reasonable time or should not be returned to her. A close reading of the judgment, however, indicates that the juvenile court did not rely on the child's statements to substantiate its first-prong finding. Instead, the juvenile court relied on testimonial evidence of Mother's failure to substantially remedy the conditions that caused K.J. to be placed outside the home and Mother's severe, chronic mental illness and chemical dependency. The juvenile court's statement that the child noted behaviors by Mother that supported the testimony of the various witnesses is merely anecdotal.

**{¶37}** Second, Mother argues that the juvenile court embellished the child's statements regarding Mother's behaviors as having been as a result of Mother's mental health and drug use

issues. Specifically, the juvenile court wrote: "[K.J.] noted in her in camera interview, the yelling and agitation that was often expressed by Mother due to her co-occurring mental health and chemical dependency disorders were disturbing to her and were a reason that she did not want to return home." Mother correctly states that the child never referenced Mother's mental health or substance abuse issues. This Court, however, does not read the juvenile court's statement to mean that K.J. referenced those issues. Instead, we read the court's statement merely to indicate that the child witnessed Mother's frequent loud and agitated behavior, which the juvenile court, not the child, found to be due to Mother's mental health and chemical dependency issues identified by the CSB caseworker and other professionals who had worked with Mother.

{¶38} Third, Mother argues that the juvenile court violated Mother's due process right to confront a witness against her when it "rel[ied] upon the *ex parte* statements the child made at the in-camera hearing[.]" (Emphasis in original.) She argues that she should have been permitted to cross-examine the child. Mother ignores the fact that it was she who requested that the juvenile court conduct an in camera interview with the child. Mother did not subpoena the child to testify at the hearing. The juvenile court did not place the child under oath, but rather engaged in informal conversation with her, as is typical of an in camera interview. Unlike the right of an accused in a criminal prosecution to confront witnesses against him or her, the Confrontation Clause of the Sixth Amendment to the United States Constitution has not been extended to allow parents to cross-examine their children during in camera interviews in permanent custody cases. The very nature of the in camera interview is non-adversarial. Moreover, CSB moved the court to reschedule the child's in camera interview to a day that the parents would not be at the courthouse, so that K.J. would not have to risk seeing Mother and

Father, thereby allowing the child to speak freely without fear of repercussion by her parents. Mother did not object to the agency's request. Neither did she object to CSB's proposed questions for the in camera interview or submit her own questions to the juvenile court. Accordingly, Mother cannot now be heard to complain that the juvenile court considered statements by the child that Mother requested the court to elicit informally without her input. Mother's second assignment of error is overruled.

### III.

{¶39} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

ANTHONY COSTELLO, Attorney at Law, for Appellee.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant
Prosecuting Attorney,

TONY PAXTON, Guardian ad Litem.