[Cite as *In re Z.S.*, 2021-Ohio-2022.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE Z.S.

C.A. No.   29887

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.   DN 19-01-0059

DECISION AND JOURNAL ENTRY

Dated: June 16, 2021

CALLAHAN, Judge.

{¶1}   Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her child in the permanent custody of Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

{¶2}   Mother and Father are the biological parents of Z.S. (d.o.b. 1/19/19). Because of significant mental health and substance abuse issues, cognitive deficits, and homelessness, Mother had previously lost custody of three older children before Z.S. was born. Father is not the biological father of the older children.

{¶3}   Within days of Z.S.' birth, CSB filed a complaint alleging three bases for the child's dependency. After an adjudicatory hearing, the juvenile court found Z.S. to be a dependent child based on the prior adjudications of her older siblings as dependent and the risk that Z.S. would be subjected to abuse or neglect due to ongoing circumstances in her home. *See* R.C. 2151.04(D).

{¶4} CSB sought and obtained the trial court's determination that the agency's use of reasonable efforts to facilitate reunification with Mother was not required based on the three prior involuntary terminations of her parental rights as to the older children. *See* R.C. 2151.419(A)(2)(e). Even so, the agency asserted that there were compelling reasons not to move for permanent custody of Z.S. at that time because it needed time to investigate Father as a viable custodian for the child. Moreover, despite its excusal from using reasonable efforts as to Mother, CSB drafted a case plan with reunification objectives for both Father and Mother. In fact, throughout the case, the agency continued to offer services to Mother. After the initial dispositional hearing, Z.S. was placed in the agency's temporary custody by agreement of the parties. The juvenile court adopted the case plan as an order.

{¶5} Initially, Mother diligently engaged in services and other requirements of her case plan. As she continued her involvement with Father, however, Mother became noncompliant, rejecting services and failing to adhere to her medication schedule. Father also failed to participate in services and visitation. Thereafter, CSB sought and obtained the juvenile court's determination that its use of reasonable efforts to facilitate reunification with Father was no longer required, as he had abandoned the child.

{¶6} Having obtained a reasonable efforts bypass determination as to both parents, CSB filed a motion for permanent custody. The parties agreed to continue that hearing, however, to allow CSB to assess the maternal grandmother as a possible legal custodian. Mother filed a motion for legal custody to the maternal grandmother, or, alternatively, for a six-month extension of temporary custody. After a final dispositional hearing, the juvenile court granted CSB's motion for permanent custody and terminated Mother's and Father's parental rights regarding Z.S. Mother filed a timely appeal in which she raises three assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED WHEN IT CONDUCTED A PERMANENT CUSTODY TRIAL WITHOUT A WAIVER OF MOTHER'S RIGHT TO BE PRESENT, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION.

{¶7} Mother argues that the juvenile court committed plain error by not obtaining Mother's waiver of her right to be physically present during the permanent custody hearing. This Court disagrees.

{¶8} Mother admits that she did not object to appearing at the permanent custody hearing by phone. Accordingly, she concedes that this Court reviews for plain error.

> In the criminal context, plain error does not exist unless it can be said that but for the error, the outcome of the trial would have been different and that reversal is necessary to prevent a manifest miscarriage of justice. *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, ¶ 57. The civil plain error standard may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.

(Internal quotations omitted.) *In re S.G.*, 9th Dist. Summit No. 27428, 2015-Ohio-2503, ¶ 11.

{¶9} This Court has not determined to date whether the criminal or civil plain error standard applies in cases involving dependent, neglected, and/or abused children. *In re K.J.*, 9th Dist. Summit No. 29149, 2019-Ohio-123, ¶ 11. We decline to make that determination here, as Mother cannot prevail under either standard.

{¶10} Although parents have a constitutionally protected right to attend permanent custody hearings, that right is not absolute. *In re L.M.*, 9th Dist. Summit No. 29687, 2020-Ohio-4451, ¶ 6. For example, there is no due process violation when an incarcerated parent cannot be

transported to the hearing regarding the termination of parental rights. *Id.*, citing *In re G.D.*, 9th Dist. Summit No. 27855, 2015-Ohio-4669, ¶ 33. As the right to appear is not absolute, it is axiomatic that the juvenile court need not obtain a parent's waiver of the right to be present. To hold otherwise would be to allow parents to perpetually delay permanent custody hearings simply by failing to appear.

{¶11} In this case, however, Mother was not precluded from appearing at and participating in the permanent custody hearing. In fact, she was present by telephone, by her agreement, for the entire hearing, except for very limited preliminary discussions and the testimony of a records custodian. In addition, Mother had not been able to connect to the proceedings for the initial testimony of a psychological assistant who explained only his client testing protocols during that time. Mother was represented by an attorney who was present throughout the entire hearing.

{¶12} On four separate occasions prior to the permanent custody hearing, the juvenile court issued orders informing the parties that they had the option to attend the permanent custody hearing either in person or remotely due to the ongoing pandemic. Mother attended the originally scheduled permanent custody hearing at which time the juvenile court continued the hearing to give CSB more time to assess the maternal grandmother as a possible custodian and reiterated the parties' choice to attend the final hearing in person or electronically. There is no evidence in the record that Mother or her attorney objected to those options. At the permanent custody hearing, both Mother and her attorney informed the juvenile court that Mother wanted to attend the hearing via telephone.

{¶13} When Mother initially had difficulty connecting to the hearing on each of the two days of the hearing, the juvenile court called her. On the one occasion that Mother's connection was dropped, the juvenile court immediately stopped the hearing and called Mother again. Mother

was present for all relevant testimony on which the juvenile court relied in rendering its judgment. Mother's attorney was present for the entire hearing. Mother testified on her own behalf during her case-in-chief.

{¶14} Mother had notice of her opportunity to appear in person for the permanent custody hearing. Instead, she chose in the alternative to appear remotely, effectively waiving any right she may have had to be physically present in the courtroom. Under these circumstances, this Court cannot conclude that the juvenile court erred by allowing Mother to appear at the permanent custody hearing via telephone. Nevertheless, even assuming arguendo some impropriety, it did not rise to the level of plain error requiring reversal. As Mother was represented by counsel and was able to participate in a meaningful way during the permanent custody hearing, she has not demonstrated how she was prejudiced by appearing remotely rather than physically present in the courtroom. Accordingly, Mother's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED WHEN IT ADMITTED EXPERT TESTIMONY REGARDING MOTHER'S MENTAL HEALTH DIAGNOSES IN VIOLATION OF [EVID.R.] 702 [ ].

{¶15} Mother argues that the juvenile court erred by admitting the testimony of a psychological assistant regarding Mother's mental health diagnoses in violation of Evid.R. 702 which addresses expert testimony. This Court disagrees.

{¶16} Mother admits that she did not object to the challenged testimony at the permanent custody hearing. Accordingly, this Court reviews for plain error.

{¶17} Although Mother challenges the improper admission of expert testimony, the record is clear that the psychological assistant did not testify as an expert. At one point during the psychological assistant's testimony, when the assistant prosecutor asked him about the effects of

a certain diagnosis on parenting abilities, Mother's attorney objected on the ground that the witness had not been qualified to testify as an expert. The State withdrew that question. Accordingly, Mother expressly recognized that the psychological assistant was testifying as a lay witness.

{¶18} Evid.R. 701 addresses opinion testimony by lay witnesses and limits the testimony to opinions which are "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." The psychological assistant's testimony was based on his perceptions of Mother during her self-reported assessment. Mother's attorney acknowledged on the record that the witness' testimony regarding his observations of Mother was proper lay testimony. Accordingly, Mother's argument regarding expert testimony is misplaced and rejected.

{¶19} To the extent that there may have been error, it does not rise to the level of reversible plain error. The record is rife with evidence of Mother's mental health diagnoses and their impact on her ability to parent children. For example, Mother's case manager at Community Support Services testified regarding Mother's multiple mental health diagnoses. The CSB caseworker testified that Mother admitted that she had been diagnosed with mental health issues and that she was not taking the medications prescribed to manage those issues. Most significantly, the juvenile court admitted certified copies of juvenile records regarding Mother's three older children. Those records contained Mother's stipulations that she had multiple untreated mental health diagnoses, as well as the juvenile court's judgments terminating Mother's parental rights as to those three children based in substantial part on the role Mother's mental health issues played in her inability to provide a safe and stable home for the children. Those records also contained this Court's opinions wherein we noted Mother's significant mental health issues and affirmed the termination of Mother's parental rights. *See In re R.L.*, 9th Dist. Summit Nos. 27214 and 27233, 2014-Ohio-

3117, and *In re A.L.*, 9th Dist. Summit Nos. 28345 and 28347, 2016-Ohio-8504. Because the juvenile court had evidence of Mother's mental health diagnoses from multiple sources for consideration, Mother cannot demonstrate prejudice by the admission of the psychological assistant's testimony. Mother's second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT'S DECISION GRANTING PERMANENT CUSTODY OF THE CHILD TO [CSB] WAS AGAI[N]ST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶20}** Mother argues that the juvenile court's judgment was against the manifest weight of the evidence. This Court disagrees.

**{¶21}** In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

**{¶22}** Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on

an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). The best interest factors include: the interaction and interrelationships of the children, the wishes of the children, the custodial history of the children, the children's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶23} In its motion for permanent custody, CSB alleged first-prong grounds that Father had abandoned the child pursuant to R.C. 2151.414(B)(1)(b), and that Z.S. could not or should not be returned to either parent pursuant to R.C. 2151.414(B)(1)(a). The evidence supports the juvenile court's finding that Father abandoned the child.

{¶24} CSB premised its allegation that the child could not or should not be returned to her parents on multiple R.C. 2151.414(E) grounds. The juvenile court only made findings as to some of those alleged grounds. Accordingly, this Court does not consider grounds not found by the trial court. As the first-prong ground of abandonment was properly found as to Father, we limit our discussion as to Mother.

{¶25} R.C. 2151.414(E) provides, in relevant part:

In determining at a hearing [on a motion for permanent custody] whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a [permanent custody] hearing * * * that one or more of the following exist as to each of the child's parents,

the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties[;]

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

* * *

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to [law], and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child;

* * *.

{¶26} Despite the agency's allegation of multiple grounds, the juvenile court only needs to find that one of the alleged R.C. 2151.414(E) factors existed to support the court's finding that the child cannot or should not be placed with her parents pursuant to R.C. 2151.414(B)(1)(a). *In re T.G.*, 9th Dist. Summit No. 29658, 2020-Ohio-4802, ¶ 18, citing *In re L.A.*, 9th Dist. Summit No. 21531, 2003-Ohio-4790, ¶ 54. While the record supports the juvenile court's findings as to all three above alleged subsections, this Court focuses our discussion on the R.C. 2151.414(E)(11) factor. As to subsection (E)(11), once the agency has proved that a parent's parental rights were previously involuntarily terminated as to a sibling of the subject child, the statutory burden then

shifts to the parent to prove that she is able to provide a legally secure placement for the child. *In re T.G.* at ¶ 18.

{¶27} CSB presented evidence that Mother previously lost custody of three other children who were placed in the permanent custody of the agency. Accordingly, the burden of proof shifted to Mother to demonstrate by clear and convincing evidence that, notwithstanding the circumstances which gave rise to those involuntary terminations of her parental rights, she was now able to provide a safe and stable home for Z.S. Mother failed to do so.

{¶28} Despite long term issues with mental health, homelessness, and unhealthy relationships, Mother testified that she was able to provide an appropriate home environment for the child. She was living in a 121 square foot room in a boarding house, which she claimed contained a toddler bed, stroller, highchair, clothes, and toys for the child. Both the caseworker and guardian ad litem testified that Mother's room was dirty, cluttered, and not an appropriate environment for a child. The caseworker added that there was a strong odor of marijuana in the room. Although Mother claimed that her room was not cluttered, she did not present evidence to overcome the significant concerns of the caseworker and guardian ad litem.

{¶29} Mother testified that she was no longer in a relationship with Father who had extensive criminal and drug use histories. Nevertheless, she admitted that the outgoing voicemail message on her phone indicated that Father also received messages on that phone. Mother admitted that she allowed Father to use her phone, although she maintained that she had no contact with him. Accordingly, it was not clear that Mother had in fact ended her unhealthy relationship with Father.

{¶30} Finally, Mother acknowledged her limited engagement during the second half of the case. Mother admitted that she had not visited with the child for almost a year at the time of

the hearing. She offered no reasonable excuse for failing to maintain a relationship with Z.S. Moreover, although she had ceased participating in case plan services during the past year, she asserted without clarification that she would be fully compliant within six months.

{¶31} Based on a thorough review, this Court concludes that Mother failed to demonstrate by clear and convincing evidence that she was now able to provide a legally secure placement for Z.S. She continued to struggle with the same issues that led to the involuntary termination of her parental rights as to three other children. Mother did not demonstrate that she was managing her mental health issues, that she had terminated unhealthy relationships, or that she was able to prioritize the needs of the child. Accordingly, the juvenile court's first-prong finding was not against the manifest weight of the evidence.

{¶32} The agency established that an award of permanent custody was in the best interest of the child. Z.S. was removed from Mother's care immediately upon the child's release from the hospital after birth. Accordingly, the child never lived in Mother's home. After spending ten days in the home of a kinship caregiver who had adopted Mother's other three children, Z.S. was moved to a foster home, where she has remained throughout the case. The foster parents are friends with the kinship caregiver, so Z.S. has maintained a relationship with her half-siblings throughout her life.

{¶33} The guardian ad litem observed that Z.S. has a significant bond with her foster family, which includes another child whom the foster parents are adopting. Although Mother visited with the child during her first year of life, Mother had no contact with the child during her second year. The guardian ad litem testified that Z.S. has no bond with Mother and opined that it was unlikely the child would even recognize Mother at this time.

{¶34} Z.S. was almost two years old at the time of the permanent custody hearing. She was not competent to convey her wishes regarding custody. The guardian ad litem opined that the best interest of the child could only be met by an award of permanent custody.

{¶35} The child had been in foster care for almost two years at the time of the hearing and requires permanence. Unfortunately, Mother is unable to provide a safe and stable environment for Z.S. Although she was compliant with case plan objectives at the beginning of the case, Mother ceased participating in mental health services more than a year before the hearing. The agency caseworker was only sporadically able to contact Mother, who always said she planned to reengage in services, but failed to do so.

{¶36} Mother has a history of homelessness. She was evicted from her subsidized housing during the case because she fell behind in her rent and let Father stay in the home without permission. She later secured a room in a boarding house. The room was too small to accommodate both Mother and the child. In addition, it was cluttered and unsanitary.

{¶37} Mother receives $541 per month in social security disability income. She claimed to work 15 hours a day for $20 per hour under the table for her landlord, but she could not verify that income. Mother testified that she would keep the child with her at all times while working so that Z.S. would be safe.

{¶38} Mother's mental health issues have been well documented throughout her history with CSB. Certified judgment entries and this Court's opinions, all admitted into evidence, reference her diagnoses for bipolar disorder, posttraumatic stress syndrome, depression, personality disorder, substance abuse issues (in remission), and cognitive delays. Mother ceased participating in services to address her mental health issues. Although she testified that she was compliant with taking her prescribed mental health medications, both the CSB caseworker and

guardian ad litem testified that the medication bottles in Mother's room at the boarding house were empty and had dates indicating that they were not current prescriptions. Mother could not show the caseworker or guardian ad litem any medications that she was taking.

{¶39} Mother has failed to visit with Z.S. for over a year without any reasonable explanation. She has never attended any of the child's routine medical appointments despite notice of those appointments.

{¶40} The guardian ad litem served in the same role in the prior cases involving Mother's three older children. He was thoroughly aware of the issues that prevented Mother from being able to provide an appropriate home for her other children, and he testified that Mother had not ameliorated those concerns. He testified that Mother had not demonstrated the ability to provide for Z.S.' basic needs based on her lack of involvement in services. He opined that the best interest of the child could only be met through an award of permanent custody.

{¶41} No other viable custodial option exists for Z.S. Although Mother had moved for legal custody of the child to the maternal grandmother, the grandmother had no relationship with Z.S., demonstrated no interest in obtaining custody, and had a child welfare history regarding her own children.

{¶42} A six-month extension of temporary custody was not warranted under the statute. R.C. 2151.415(D) requires significant case plan compliance and reasonable cause to believe that reunification of the child with a parent is likely within six months. Given Mother's lack of compliance with case plan objectives during the last year of the case, there was no basis for an extension of temporary custody, even assuming one could be granted given the age of the case.

{¶43} One of the statutory factors in R.C. 2151.414(E)(7)-(11) is applicable in this case as to Mother. As previously discussed, her parental rights had been involuntarily terminated with

respect to siblings of Z.S. *See* R.C. 2151.414(E)(11). Moreover, Mother failed to demonstrate by clear and convincing evidence that she could now provide a legally secure placement for the child. *Id.*

{¶44} Based on a thorough review of the record, this is not the exceptional case in which the trier of fact clearly lost its way and committed a manifest miscarriage of justice by terminating the parents' parental rights and awarding permanent custody to CSB. Father abandoned the child. Mother failed to engage in case plan services or otherwise address her mental health issues which historically prevented her from being able to provide a safe and stable home for a child. Mother's housing was not appropriate for the child. Mother had not maintained a relationship with Z.S., failing to visit with the child for over a year. There were no viable legal custodians for the juvenile court's consideration. Under these circumstances, the juvenile court's finding that it was in the child's best interest to terminate parental rights and award permanent custody to CSB is supported by clear and convincing evidence. Accordingly, the judgment is not against the manifest weight of the evidence. Mother's third assignment of error is overruled.

III.

{¶45} Mother's assignments of error are overruled. This judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

—————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

ADAM M. VAN HO, Attorney at law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.